IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HUYNH, QUOC,<br><br>        Petitioner,<br><br>vs.<br><br>SHIKHA DOSANJ, *in her official capacity as Warden of the Federal Detention Center, Honolulu, Hawai'i*; POLLY KAISER, *in his official capacity as Acting Field Office Director of the Immigration and Customs Enforcement, San Francisco Field Office*; KRISTI NOEM, *in her official capacity as Secretary of the Department of Homeland Security*; PAMELA BONDI, *in her official capacity as Attorney General of the United States*,<br><br>        Respondents. | CIV. NO. 26-00014 SASP-WRP<br><br>ORDER GRANTING PETITION FOR A WRIT OF HABEAS CORPUS |

ORDER GRANTING PETITION FOR A WRIT OF HABEAS CORPUS

        Quoc Huynh ("Huynh") is an immigration detainee who has been in custody at the Federal Detention Center Honolulu ("FDC Honolulu") for more than eight months. On January 15, 2026, he filed a Petition for a Writ of Habeas Corpus ("Petition"), arguing that his prolonged detention violates the United States Supreme Court's ("Supreme Court") decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal from the United States is not reasonably foreseeable. For the reasons stated herein, Huynh's Petition is GRANTED.

I.      FACTUAL BACKGROUND[1]

Huynh is a native and citizen of Vietnam. [Pet., ECF No. 1 ¶ 2; Decl. of Leon Yet Kui Ho ("Ho Decl."), ECF No. 21-1 ¶ 5.] His family suffered persecution because his father was a member of South Vietnam's military. [Pet. ¶ 2.] As a result, in 1990, Huynh and his family were paroled[2] into the United States as public interest parolees pursuant to the Amerasian Homecoming Act of 1987, and Huynh was granted lawful permanent resident status. [*Id.*; Ho Decl. ¶ 6.]

Huynh's relocation to the United States was not without transgression. On November 16, 1994, Huynh was convicted of misdemeanor forgery in the Municipal Court in San Jose, California. [Pet. ¶ 7; Ho Decl. ¶ 7.] Less than one year later, on April 15, 1995, he was convicted of attempted first-degree burglary in the Santa Clara County Superior Court. [Pet. ¶ 8; Ho Decl. ¶ 7.] Then, several years later, on January 23, 2001, Huynh was convicted of burglary in the first degree in the First Circuit Court of the State of Hawaiʻi. [Pet. ¶ 9; Ho Decl. ¶ 7.] Since this last conviction, though, Huynh has lived "a law abiding life and has demonstrated rehabilitation and integration into a productive life in Hawaii." [Pet. ¶ 10.]

After Huynh was convicted of numerous crimes in California, on March 23, 2000, the immigration court issued him a final order of removal.[3] [*Id.* ¶ 12.] Despite this order,

---

[1] The facts contained within this section are largely drawn from the Petition, as the exhibits Huynh relies upon were never submitted to the Court for consideration. Nonetheless, Respondents do not contest Huynh's summary, and the parties appear to agree as to the underlying facts. Therefore, the Court treats these facts as undisputed.

[2] "Parole" in the immigration context refers to the discretionary decision by the Secretary of Homeland Security to allow inadmissible aliens to be physically present within the United States "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A).

[3] The Petition does not explain how this final order of removal materialized.

Huynh's removability seemingly avoided the spotlight until more than seven years later, on September 13, 2007, when Huynh returned from a family trip to Vietnam. [*Id.* ¶ 4; Ho Decl. ¶ 8.] At that point, the Department of Homeland Security ("DHS") placed Huynh in removal proceedings, charging him as removable under Section 212(a)(2)(A)(i)(I)[4] of the Immigration and Nationality Act ("INA"). [Pet. ¶ 4.] On June 3, 2009, the immigration court denied waiver of inadmissibility or cancellation of Huynh's removal, concluding that his 1995 conviction was an aggravated felony and ordering his removal. [*Id.* ¶ 5; Ho Decl. ¶ 9.] On July 2, 2009, Huynh appealed to the Board of Immigration Appeals, which appeal was dismissed on November 16, 2010. [Pet. ¶ 5; Ho Decl. ¶¶ 10–11.] Then, on December 27, 2010, Huynh further appealed to the Ninth Circuit Court of Appeals ("Ninth Circuit") in *Huynh v. Holder*,[5] No. 10-73817; but on November 1, 2012, the Ninth Circuit denied his appeal. [Pet. ¶ 6; Ho Decl. ¶¶ 12–13.] Consequently, Huynh is subject to a final order of removal. [Ho Decl. ¶ 13.]

On January 30, 2013, the United States Immigration and Customs Enforcement ("ICE") mailed Huynh a notice directing him to report to an immigration officer on February 9, 2013. [*Id.* ¶ 14.] When Huynh reported as directed, he was arrested and detained. [*Id.* ¶ 15.] More than two months later, on April 29, 2013, a request for a travel document was made for Huynh to return to Vietnam, but because "there was no significant likelihood of removal in the reasonably foreseeable future," on May 16, 2013, Huynh was released under an order of supervision. [*Id.* ¶¶ 16–17.]

---

[4] Section 212 is codified at 8 U.S.C. § 1182.

[5] Based on this Court's research, the Westlaw citation for this case appears to be 495 F. App'x 810 (9th Cir. 2012) (mem.).

Several years elapsed without incident as Huynh remained out of custody within the United States. Then, on June 10, 2025, a call-in letter was mailed to Huynh directing him to report to ICE on June 23, 2025. [Ho Decl. ¶ 18.] When Huynh reported as directed, he was arrested and detained, and his order of supervision was revoked. [*Id.* ¶ 19.] On July 24, 2025, Huynh's wife and son, who are United States citizens, filed a petition for alien relative, which is currently pending with the United States Citizenship and Immigration Services. [Pet. ¶ 20.]

More than five months after Huynh's re-detention, on November 28, 2025, another request for a travel document was made for Huynh to return to Vietnam. [Ho Decl. ¶ 20.] Then, on December 12, 2025, Huynh was served a letter informing him that he will not be released from custody. [*Id.* ¶ 21.] Even after Huynh was provided an opportunity to submit information establishing a basis for his release, a recommendation was made to continue his detention status. [*Id.* ¶ 22.] Subsequently, on January 1, 2026, Huynh's "case was referred for further custody review and decision." [*Id.* ¶ 23.]

To date, no travel document has been issued, and no "future custody decision" has been supplied. [*Id.* ¶ 25.] Further, although Huynh has applied for a Vietnamese passport, he has not yet received a response.[6] [Pet. ¶¶ 11, 15.]

## II.     PROCEDURAL BACKGROUND

Having been in custody for more than eight months with no end in sight, on January 15, 2026, Huynh filed the current Petition against the warden of FDC Honolulu and three other United States government officials (collectively "Respondents") pursuant to 28 U.S.C. § 2241. [Pet.] In his Petition, Huynh principally seeks immediate release, arguing that his

---

[6] The Petition does not state when Huynh submitted his application for a Vietnamese passport.

prolonged detention violates Section 241(a)(6)[7] of the INA, Section 706(2)(A)[8] of the Administrative Procedure Act, and the due process clause of the Fifth Amendment to the United States Constitution. [*Id.* ¶¶ 59, 82–90.] For reasons unbeknownst to this Court, there was a delay in service of the Petition, and thus, counsel for Respondents made only a special appearance on behalf of Respondents at the status conference held on January 30, 2026. [ECF No. 17.] This status conference was continued to February 3, 2026, to allow for proper service of Respondents. [*Id.*] Respondents were ultimately served, as their counsel entered a notice of appearance on February 2, 2026. [ECF No. 18.] Then, on February 3, 2026, a further status conference was held, during which the parties waived the time constraints of 28 U.S.C. § 2243 and agreed to a briefing schedule beyond the period prescribed by statute. [ECF No. 19.] The parties then timely submitted their respective pleadings and requested that this Court resolve the Petition without a hearing. [ECF Nos. 21–22, 26.]

**III.    DISCUSSION**

As an initial matter, there does not appear to be a dispute as to the exhaustion of administrative remedies, and no custody determination is pending appeal within the immigration courts. Additionally, pursuant to 28 U.S.C. § 2241, this Court has jurisdiction to hear Huynh's Petition. *See* 28 U.S.C. § 2241(c) (district courts may grant writs of habeas corpus to prisoners who demonstrate they are "in custody in violation of the Constitution or laws or treaties of the United States"); *Zadvydas*, 533 U.S. at 688 ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to

---

[7] Section 241 is codified at 8 U.S.C. § 1231.

[8] Section 706 is codified at 5 U.S.C. § 706.

post-removal-period detention."). Accordingly, the Court now turns to the substance of the Petition.

Huynh does not challenge the final order of removal or ICE's decision to detain him during the removal period authorized by 8 U.S.C. § 1231(a). [*See* Pet. ¶¶ 38–44, 49–51, 57–59.] Rather, he argues that his prolonged post-removal-period detention is unlawful because ICE is not likely to remove him from the United States in the near future. [*Id.* ¶¶ 49–51; *see also* Reply, ECF No. 22 at PageID.99–102.] Hence, the primary issue before this Court is whether Huynh's removal is likely to occur in the reasonably foreseeable future.

The parties agree Huynh is being detained under the post-removal detention provision of the INA, codified at 8 U.S.C. § 1231(a). That provision states, in relevant part, as follows:

> Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").
>
> . . .
>
> During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

8 U.S.C. § 1231(a)(1)(A), (a)(2)(A).

Subsection (6) of § 1231(a) authorizes detention of a removable alien beyond the removal period, with no express limitation on the length of time detention may continue under the statute's authority. But in *Zadvydas*, the Supreme Court held that § 1231(a)(6) does not authorize indefinite or permanent detention of a removable alien, construing this provision "to contain an implicit 'reasonable time' limitation." 533 U.S. at 682. Thus, under *Zadvydas*,

6

post-removal-order detention is limited "to a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689. This period, the Supreme Court has determined, is presumptively six months. *Id.* at 701. But after the six-month period, there is no longer a presumption of constitutionality, and "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* Of course, the six-month presumption does not mean that every alien not removed within six months must be released—only that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

With these requirements in mind, the Court now turns to the circumstances of Huynh's detention.

### A. Huynh's detention exceeds the presumptively reasonable period.

Courts are divided on whether the *Zadvydas* six-month clock resets when a removable alien is re-detained after being released on supervision. *See, e.g.*, *Jimenez Chacon v. Lyons*, 2:25-cv-977-DHU-KBM, 2025 WL 3496702, at *7 (D.N.M. Dec. 4, 2025) (where an alien is re-detained after being released under an order of supervision, the period of post-removal detention includes not only the alien's current detention, but also his initial detention (citations omitted)); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 721–22 (W.D. Wash. 2025) (agreeing that the six-month period does not reset when the alien is detained, released, and then re-detained); *but see Bayat v. Bradford*, CIVIL ACTION NO. 9:25-CV-00325, 2025 WL 3639441, at *2 (E.D. Tex. Dec. 12, 2025) ("[T]he Court is not persuaded that the six month clock is incapable of resetting after re-detention."); *Guerra-Castro v. Parra*, Case No.: 1:25-cv-22487-GAYLES, 2025 WL 1984300, at *1, *4 (S.D. Fla. July 17, 2025) (calculating from the re-detention date and holding

7

that the petitioner who was released from immigration custody and then re-detained years later had not been in custody for more than six months). Nonetheless, this Court need not decide this issue, as Huynh's current period of detention exceeds six months.

The parties agree Huynh has been in custody since June 23, 2025, when he was re-detained upon reporting to ICE as directed. From that time, Huynh has been detained at FDC Honolulu. Because more than eight months have elapsed since Huynh re-entered custody, his detention exceeds the presumptively reasonable six-month period under *Zadvydas*.

### B.     Huynh has shown that his removal is not reasonably foreseeable.

Respondents contend Huynh has failed to meet his burden of demonstrating that there is no significant likelihood he will be removed in the reasonably foreseeable future. [Resp'ts Resp., ECF No. 21 at PageID.81.] This Court disagrees.

Huynh was originally ordered removed in 2000, but instead of being removed, he was placed under an order of supervision that required him to regularly report to ICE and comply with all conditions of release. [Pet. ¶ 12.] When he was detained in 2013, Huynh ultimately did not remain in custody. As Respondents acknowledge, Huynh was released under an order of supervision because "there was no significant likelihood of removal in the reasonably foreseeable future." [Ho Decl. ¶¶ 16–17.] That Huynh was previously released from detention because his removal was not reasonably foreseeable, coupled with the absence of a travel document before and at present, is a good indicator that there is no significant likelihood he will be removed in the reasonably foreseeable future. This conclusion is buttressed by Vietnam's historical reluctance "to accept deportees, particularly individuals with criminal records," like Huynh, and the agreement reached in 2008 between the governments of the United States and Vietnam. [Pet. ¶¶ 11, 13.] Under that agreement, "Vietnamese citizens are not subject to return to

8

Vietnam . . . if they arrived in the United States before July 12, 1995, the date on which diplomatic relations were re-established between" the two governments. [*Id.* ¶ 13.] Huynh would presumably fall within this category, as he relocated to the United States in 1990. Further, Huynh's showing that his removal is not reasonably foreseeable is reinforced by the mere fact that his attempt to obtain a Vietnamese passport has, so far, been unsuccessful. [*Id.* ¶¶ 11, 15.]

       Taken together, the facts presented in the Petition constitute "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."[9] *Zadvydas*, 533 U.S. at 680.

       **C.    Respondents have not rebutted Huynh's showing that he is not likely to be removed in the reasonably foreseeable future.**

       The remaining question is whether Respondents have furnished evidence to the contrary. In support of their position that Huynh "will be expeditiously removed from the United States," they assert the following:

> [T]he relationship between the United States and Vietnam has been evolving. For example, in November 2020, the United States and Vietnam agreed to a process for the deportation of certain citizens of Vietnam who entered the United States prior to 1995. *See* November 21, 2020 Memorandum of Understanding Between the Department of Homeland Security and the United States of America and the Ministry of Public Security of the Socialist Republic of Vietnam on the Acceptance of the Return of Vietnamese Citizens who Arrived in the United States Before

---

[9] This Court notes that a district judge in this jurisdiction similarly found under comparable circumstances that the petitioner in another case met his burden of showing that there was no significant likelihood of removal to Vietnam in the reasonably foreseeable future. *Vu v. Dosanj*, Civil No. 26-00013 MWJS-RT, 2026 WL 594740, at *2 (D. Haw. Mar. 3, 2026). In *Vu*, the district judge also highlighted a collection of cases from other jurisdictions in which courts have made similar findings. *Id.* (citing *Truong v. Bondi*, Case No. SA-25-CA-01947, 2026 WL 475296, at *4 (W.D. Tex. Feb. 11, 2026); *Pham v. Scott*, Case. No. 2:26-cv-00027, 2026 WL 238994, at *4–5 (W.D. Wash. Jan. 29, 2026); *Dao v. Bondi*, Case No. 2:25-cv-02340, 2026 WL 18626, at *4 (W.D. Wash. Jan. 2, 2026); *Abubaka v. Bondi*, Case No. C25-1889, 2025 WL 3204369, at *4 (W.D. Wash. Nov. 17, 2025); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 721–23 (W.D. Wash. 2025)).

> July 12, 1995 and Who Have Been Ordered Removed from the United States *available at* ALC-FOIA-Re-Release-MOU-bates-1-8-8-10-21.pdf (last visited Oct. 10, 2025).
>
> The Headquarters Office of the Removal and International Operations ("RIO") for the Removal Management Division of ICE is responsible for assisting ERO's field offices in obtaining travel documents necessary to execute administratively final orders of removal.
>
> RIO has been actively engaging the Government of Vietnam in pursuit of a travel document for Mr. HUYNH.
>
> RIO employs an Assistant Attache for Removal ("AAR") who works directly with the Government of Vietnam, specifically on repatriation efforts.
>
> In November of 2025, the AAR presented the travel document request for Mr. HUYNH. The request remains pending.

[Resp'ts Resp. at PageID.82–83; Ho Decl. ¶ 26.] Based on this evidence, supported by the declaration of a deportation officer, this Court finds that Respondents have not rebutted Huynh's showing that he is not likely to be removed in the reasonably foreseeable future.

Other than providing a general assertion that the relationship between the United States and Vietnam has been evolving and that the two governments have agreed to a process for deporting certain Vietnamese citizens, Respondents do not provide a single example of a case where their efforts to repatriate a Vietnamese citizen have been successful. With respect to Huynh specifically, Respondents do not point to an individualized change in circumstances demonstrating that Vietnam will now accept Huynh when it did not do so before. Nor do Respondents offer evidence as to any progress made on the request for a travel document for Huynh, whether Vietnam has received or reviewed such request, and the likelihood--based on concrete evidence--that a travel document for Huynh will be secured in the near future. As might be expected, "[t]he longer a request for travel documents remains pending without any action, 'what counts as the "reasonably foreseeable future" conversely would have to shrink.'" *Samadi v.*

*Warden Richwood Corr. Ctr.*, CIVIL ACTION NO. 25-1889, 2026 WL 660574, at *2 (W.D. La. Mar. 9, 2026) (quoting *Zadvydas*, 533 U.S. at 701).

Furthermore, Respondents' evidence here is even more scant than in another immigration case within this jurisdiction, where the government had presented "more generalized assertions" about its success in repatriating Vietnamese citizens. *Vu v. Dosanj*, Civil No. 26-00013 MWJS-RT, 2026 WL 594740, at *3 (D. Haw. Mar. 3, 2026). In *Vu*, unlike here, the government submitted evidence, in the form of an ICE agent's declaration, that "ICE routinely has flights to Vietnam," that "ICE has removed several Vietnamese citizens to Vietnam as recently as November 2025," and that "ICE . . . removed at least 587 Vietnamese citizens to Vietnam" in fiscal year 2025. *Id.* Yet, even with such evidence, the court concluded that the government failed to meet its burden, reasoning that the government's assertions did "not offer any indication of what *percentage* of the government's requests are successful, or what *percentage* of the total number of attempted removals the 587 successful ones represent." *Id.* The court in *Vu* also noted other courts' similar observations with respect to the deficiency in the government's removal statistics as offered in rebuttal. *Id.* (citing *Dao v. Bondi*, CASE NO. 2:25-cv-02340-LK, 2026 WL 18626, at *5 (W.D. Wash. Jan. 2, 2026); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 151 (D. Mass. 2025)). Needless to say, if the government's evidence in *Vu* did not rebut the petitioner's showing there, then Respondents' evidence here certainly does not rebut Huynh's showing either.

Under *Zadvydas*, the standard is not whether there is "*any* prospect of removal—no matter how unlikely or unforeseeable." 533 U.S. at 702. Instead, to satisfy constitutional demands, the government must respond with evidence sufficient to rebut the

showing "that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Respondents here come up short.

### D. Huynh is entitled to immediate release.

"[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Zadvydas*, 533 U.S. at 699–700. Huynh's detention "exceeds a period reasonably necessary to secure [his] removal," *id.* at 699, and, thus, is unlawful under 8 U.S.C. § 1231(a). Accordingly, Huynh must be immediately released. In that case, Huynh's "release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and" Huynh "may no doubt be returned to custody upon a violation of those conditions." *Zadvydas*, 533 U.S. at 700 (citation omitted).

Given that Huynh's post-removal-period detention violates § 1231(a), this Court need not resolve the additional claims raised in the Petition. And as the parties' pleadings center around removal to Vietnam, the Court also does not consider Huynh's postulation that "it is exceedingly unlikely that ICE will identify an alternative country to which it can remove" him. [Pet. ¶ 51.] Though, to the extent Respondents intend to remove Huynh to a country not designated as a country of removal on his order of removal, he may be entitled to meaningful notice--and meaningful opportunity to raise a country-specific claim against removal--before removal to any such country. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, --- F. Supp. 3d ----, 2026 WL 521557, at *2, *40 (D. Mass. Feb. 25, 2026) (holding that DHS's policy of removing aliens, without notice, to countries not designated as countries of removal on the aliens' orders of removal fails to satisfy due process), *appeal docketed*, No. 26-1212 (1st Cir. Feb. 28, 2026).

**IV.      CONCLUSION AND ORDER**

Huynh's post-removal detention beyond the presumptively reasonable period is unlawful. Consequently, this Court ORDERS the following:

1. Huynh's Petition, ECF No. 1, is GRANTED as to the warden.[10]

2. The warden of FDC Honolulu, Respondent Shikha Dosanj, must immediately release Huynh from custody.

3. Huynh's release is subject to all conditions of his preexisting order of supervision.

4. No later than **March 19, 2026**, the warden shall certify her compliance with this Court's Order through a filing on the docket.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, March 12, 2026.

Shanlyn A.S. Park
United States District Judge

*Huynh, Quoc v. Shikha Dosanj, in her official capacity as Warden of the Federal Detention Center, Honolulu, Hawaiʻi, et al.*; Civil No. 26-00014 SASP-WRP; ORDER GRANTING PETITION FOR A WRIT OF HABEAS CORPUS

---

[10] The Court agrees with Respondents that the warden, as the person having custody over Huynh, is the only proper respondent to the habeas petition in this case, and no argument to the contrary has been presented to this Court for consideration. Therefore, Respondents' motion "to strike and to dismiss all respondents other than" the warden is GRANTED. [*See* Resp'ts Resp. at PageID.76 n.1.]